GROSS, C.J.
 

 The Florida Department of Children and Families (“DCF”) appeals an order dismissing an
 
 ex parte
 
 injunction entered against a father of minor children pursuant to section 39.504, Florida Statutes (2009). At a hearing required by due process, DCF failed to justify the continuation of the injunction, so we affirm the order of the circuit court.
 

 The mother and the father are both attorneys. The mother is an attorney for DCF in Dade County. The mother and the father had an ongoing, contentious divorce case in Broward County. In the divorce case, the family court judge ruled against the mother on some of the allegations she made against the father. For example, in March, 2009, the judge denied the mother an injunction she had sought on behalf of her children.
 

 On August 21, 2009, the mother filed a pro se emergency motion to suspend visitation. Attached to the motion was an affidavit from a psychologist. The mother never called this motion up for hearing before the family court judge.
 

 On September 18, 2009, DCF filed a petition for a section 39.504 injunction in Broward County. Subsection 39.504(1), Florida Statutes (2009), authorizes the department to seek an injunction to “prevent any act of child abuse” at “any time after a protective investigation has been initiated pursuant to part III” of Chapter 39. The statute contemplates that the injunction remedy will be used in conjunction with a dependency proceeding in order to protect children from acts of abuse.
 
 See id.
 
 The DCF petition contained many of the same allegations that the mother had included in her August 21 emergency motion to suspend visitation; also, the petition refers to the same psychologist’s affidavit that the mother had used to support her August 21 motion.
 

 On the same day the petition was filed, a hearing was held before Judge Carlos Re-bollo, who was not the family court judge familiar with the hostile dynamics of this family. The father was given two hours telephone notice of the hearing. Because he was in the Florida Keys, he asked for permission to appear by telephone. DCF informed the court of the father’s request.
 
 *918
 
 DCF objected to the father’s appearance by telephone, so Judge Rebollo did not allow it. He instructed his bailiff to “sound the halls” for the father, and, when no one responded, the judge proceeded with the hearing. In addition to the mother, two lawyers and three DCF representatives were present. None of these professionals advised Judge Rebollo of the pending proceedings in family court and he did not ask. The short hearing consisted primarily of the judge reading an affidavit and a brief proffer of facts by a DCF attorney.
 
 [1]
 
 One DCF representative was concerned that the father had sent him a letter threatening to sue him.
 

 The DCF attorney convinced the judge to enter an injunction that remained in effect until further order of the court, without holding any further hearing. Section 39.504(2) provides that if a judge issues “an immediate injunction,” “the court must hold a hearing on the next day of judicial business to dissolve the injunction or to continue or modify it.” The DCF attorney called the court’s attention to this section, but suggested that it did not apply. The attorney provided the judge with a preprinted form injunction for his signature.
 

 At the end of the September 18 hearing, Judge Rebollo entered an injunction that took effect immediately, so the mother could leave court with it in hand. The injunction did not schedule a hearing “the next day of judicial business.” Among other things, the injunction ordered the father to have no direct or indirect contact with his children and prevented him from going within 500 feet of the children’s current residence and school. Even though Judge Rebollo had never seen or heard from the father, the injunction also ordered the father to undergo two evaluations — for substance abuse and by a psychologist.
 

 To anyone familiar with the concept of due process, the abbreviated September 18 “hearing,” consuming but eight pages of transcript, is shocking. Three attorneys were present — Ali Vazquez on behalf of DCF, Lee Seidlin for the Guardian Ad Litem program, and the mother. None of the attorneys made Judge Rebollo aware of the ongoing proceedings in family court. None of the attorneys mentioned the mother’s August 21 emergency motion. None of the attorneys brought up the mother’s previous attempt to secure an injunction on behalf of the children, which was denied. DCF’s pre-printed, standard form for a petition for a section 39.504 injunction provides an area to describe “any other paternity action, child support enforcement action, or dependency case that is either going on now or that happened in the past.” There is no fill-in-the-blank for an ongoing family court proceeding. The only reference in the petition to the divorce proceeding is a statement on page 5 that “[t]he mother and father are
 
 *919
 
 divorced.” Even though Judge Rebollo imposed drastic conditions in the injunction' — barring a father from his children and requiring that he submit to drug and psychological evaluations — no one at the hearing was concerned that the father have any input into the propriety of the injunction. A primary focus of DCF’s attorney at the hearing was how to avoid further scrutiny of the injunction at a time when the person enjoined could have a meaningful opportunity to be heard.
 
 [2]
 

 On October 20, 2009, Judge Marina Garcia-Wood, the family court judge, ordered the transfer of the injunction case to the family court because of the longstanding dissolution case pending there. On October 22, Judge Garcia-Wood held what she characterized as a subsection 39.504(2) hearing.
 

 At the hearing, DCF took the position that it was the father’s burden to present evidence since he sought to dissolve the injunction. Judge Garcia-Wood disagreed with this legal argument.
 

 The DCF investigator who signed the September 18 petition had no firsthand knowledge about this case, the related dissolution action, or the allegations that she swore were “true and correct.” She relied on information provided to her by her supervisor, the affidavit of a psychologist supplied by the mother, and police reports from March, 2009. She said that based on the March incident and another in August that there was an “increased pattern” of violence. She testified that DCF had not filed a dependency petition in the month since the injunction had been entered.
 

 A second witness at the October 20 hearing was a DCF supervisor. She was aware that the mother had filed in the family court for an injunction in March, 2009, which was denied. She made the decision to proceed for an injunction under section 39.504, in part because it was an “available remedy.” Judge Garcia-Wood asked why DCF sought the injunction under the statute when the mother had a remedy available to her in the pending family court case. The DCF supervisor’s only response was that the “legislature has enabled the Department to be able to intervene regardless of the parent doing it or not doing it.” Judge Garcia-Wood asked how often DCF had chosen to seek a section 39.504 injunction when no dependency proceedings were contemplated. The supervisor replied that this case was the first time she had done so.
 

 DCF rested its case. After the father briefly questioned the mother, Judge Garcia-Wood dismissed the injunction. The court observed that the affidavit used in support of the September DCF petition was the same one attached to the mother’s August motion in the family court. The judge expressed her “serious concerns” about DCF filing its petition to bypass existing proceedings in the family court where a judge was familiar with this family and about the “veracity of the information that was used to get the injunction before a judge that had no knowledge as to the history of these people.” The judge found that the DCF
 

 
 *920
 
 petition for injunction was filed in bad faith, and the mother used her position as an attorney with [DCF] to bypass a proceeding before this court and to seek and obtain an injunction before a dependency judge who has no knowledge as to the history of the parties.
 

 DCF contends that at the October 20 hearing, Judge Garcia-Wood improperly placed the burden of proof on the Department to maintain the injunction. To reach this conclusion, DCF argues that the father was not entitled to an immediate hearing to dissolve the injunction. Even though the September 18 injunction issued immediately after the hearing, DCF asserts that this was not an “immediate injunction” for which the court was required to hold a hearing “on the next day of judicial business.” § 39.504(2). DCF draws this conclusion from the first sentence of subsection 39.504(2), which says that “[n]otiee shall be provided to the parties as set forth in the Florida Rules of Juvenile Procedure, unless the child is reported to be in imminent danger, in which case the court may issue an injunction immediately.” DCF contends that its telephone call to the husband two hours prior to the hearing satisfied the requirement of Juvenile Rule 8.225(c)(3), requiring that notice be “that which is most likely to result in actual notice.” According to DCF, because the husband had “actual notice,” the injunction did not qualify as an immediate injunction, so the proper avenue for the husband to attack the injunction was subsection 39.504(3)(c), which authorizes a motion to modify or dissolve the injunction. At such a hearing, DCF asserts, the husband “should have had the burden of proof to show why the petition should be modified or dissolved.”
 

 DCF’s argument ignores basic principles of due process. Whether the October 20 hearing is viewed as a hearing under subsection 39.504(2) or as a motion to dissolve pursuant to subsection 39.504(3)(c), the burden of proof was on DCF to justify the continuation of the injunction.
 

 It is presumed that the legislature was aware of due process considerations at the time it passed subsection 39.504(2) and that it intended a constitutional enactment.
 
 See Adams v. Gordon,
 
 260 So.2d 246, 248 (Fla. 4th DCA 1972);
 
 Chiapetta v. Jordan,
 
 153 Fla. 788, 16 So.2d 641, 644 (1944) (on rehearing). A court therefore has “a duty to interpret a statute so that it withstands constitutional scrutiny.”
 
 Walker v. Bentley,
 
 660 So.2d 313, 320 (Fla. 2d DCA 1995).
 

 DCF secured an “immediate injunction” within the meaning of subsection 39.504(2). The purpose of the “notice” referred to in that section is to allow the parties to meaningfully participate in the hearing for an emergency injunction. Here, the father received the notice, but it was insufficient to allow the father’s attendance at the hearing and DCF obstructed the father’s attempt to appear by telephone. Claiming that children were in “imminent danger,” DCF secured an immediate injunction at the end of the September 18 hearing. Judge Rebollo was required to hold “a hearing on the next day of judicial business to dissolve the injunction or to continue or modify it.” § 39.504(2). Judge Garcia-Wood complied with the statute when she set a hearing on the injunction within two days of transferring the case to the family division.
 

 Even if the October 20 hearing is viewed as the father’s motion to dissolve the injunction, DCF had the burden of proof to show why the injunction should continue. “Ex parte orders are antithetical to precious due process rights.”
 
 Smith v. Knight,
 
 679 So.2d 359, 361 (Fla. 4th DCA 1996). The ex parte injunction entered here is akin to an ex parte order
 
 *921
 
 granting temporary custody in a family law case or an ex parte temporary injunction without notice. Where a defendant challenges the entry of an ex parte order or injunction by a motion to dissolve, at the hearing on the motion the burden is on the party who obtained such a ruling “to show that the complaint and supporting affidavits are sufficient to support the injunction.”
 
 Matin v. Hill,
 
 801 So.2d 1003, 1005 (Fla. 4th DCA 2001), (quoting
 
 State v. Beeler,
 
 530 So.2d 932, 934 (Fla.1988)). As we wrote in
 
 Matin,
 

 “[a] plaintiff who has obtained ex parte relief based simply on allegations in its complaint cannot shift the burden to the defendant until it has established an evi-dentiary basis to support such relief.”
 
 Shea v. Cent. Diagnostic Servs., Inc.,
 
 552 So.2d 344, 346 (Fla. 5th DCA 1989). Indeed, the burden remains on the plaintiff to “go forward with evidence sufficient to sustain the ex parte grant of temporary injunctive relief.”
 
 Id.
 

 801 So.2d at 1006;
 
 see also Smith v. Crider,
 
 932 So.2d 393, 399 (Fla. 2d DCA 2006).
 

 By setting the October 20 hearing, Judge Garcia-Wood furthered an important constitutional principle. Contrary to DCF’s argument, she was not a “successor judge” correcting or reversing the legal errors of her predecessor.
 
 See Smith v. Mobley,
 
 95 Fla. 829, 116 So. 760 (1928). Rather, Judge Garcia-Wood was a successor judge in the same ease conducting a mandatory hearing that her predecessor never held. At the hearing, DCF failed to make a case for continuing the injunction.
 

 Affirmed.
 

 WARNER and CIKLIN, JJ., concur.
 

 [1]
 

 . Section 39.504 does not specify what type of evidence may be introduced in an
 
 ex parte
 
 hearing to obtain an "immediate injunction.” However, other provisions of Florida law preclude the use of anything but affidavits or a verified pleading at
 
 ex parte
 
 temporary injunction hearings, unless there has been at least reasonable notice to the adverse party. For example, Florida Rule of Civil Procedure 1.610(a)(2) provides that "[n]o evidence other than the affidavit or verified pleading shall be used to support the application for a temporary injunction unless the adverse party appears at the hearing or has received reasonable notice of the hearing.” At an
 
 ex parte
 
 hearing to obtain a domestic violence temporary injunction, "no evidence other than verified pleadings or affidavits shall be used as evidence, unless the respondent appears at the hearing or has received reasonable notice of the hearing.” § 741.30(5)(b), Fla. Stat. (2009). The father in this case did not receive reasonable notice.
 

 [2]
 

 . We note that Florida Rule of Professional Conduct 4-3.3(c) provides:
 

 (c) Ex Parte Proceedings. In an ex parte proceeding a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.
 

 Had the lawyers involved advised Judge Re-bollo of the ongoing proceedings in the family court, he might well have consulted with the family court judge before signing the injunction.