BERGER, J.
In this paternity case, Camila Ashby (Mother), appeals the trial court’s denial of her motion to dissolve an ex parte temporary order that awarded Nathan Murray (Father) temporary custody of their minor child. Mother argues the trial court abused its discretion when it refused to dissolve the temporary order following an evidentiary hearing. Because we find Father failed to present competent, substantial evidence at the hearing to support the temporary order, we reverse.
The procedural background of this case is complicated. On February 15, 2005, the trial court entered a final judgment, which adjudicated Father as the natural father of the child, awarded Mother sole custody, and awarded Father supervised visitation. The final judgment also set forth Father’s child support obligations. Father was not present at the trial.
Three years later, Father moved to set aside the final judgment for fraud upon the court. On November 5, 2010, the trial court entered a written order setting aside the final judgment and suspending child support until it could be recalculated at a subsequent trial. Mother was found in contempt and Father was given temporary custody until November 12, 2010.[1] The parties were ordered to return to court on November 12, for a review hearing, at which time the ease would be set for another trial to resolve the issues in the original petition and counter-petition.
Mother was not present at the November 12 review hearing because she was still in custody.[2] At that time, Father indicated he had information from the child’s maternal uncle that Mother had previously threatened to commit suicide and kill the child. Later that day, Father filed a verified motion to transfer temporary custody of the child to him until Mother underwent a psychological evaluation.[3]' On November *954 15, 2010, the trial court entered an order awarding Father temporary custody of the child during the pendency of the proceedings and gave Mother supervised contact with the child.[4] Father was allowed to remove the child from Florida to his home in Virginia. Mother has not seen the child since November 15, 2010.
On March 8, 2011, Mother filed a motion to dissolve the ex parte temporary order transferring custody of the minor child to Father. A hearing was held on April 4, 2011, at which time Mother, Father, and the child’s maternal grandmother testified. Mother denied having suicidal ideations and filed a psychological report indicating same with the trial court. She also explained she was living and working in Orlando and capable of taking care of the child. The maternal grandmother testified the child was happy, healthy and cheerful with Mother. She also testified that Mother never indicated to her that she wanted to commit suicide or otherwise harm the child. Father testified regarding positive changes in the child’s health and academics and provided a transcript of the November 5, 2010 hearing as evidence of proof of Mother’s erratic behavior. At the conclusion of the hearing, the trial court indicated it would not disturb the status quo because it appeared the child was thriving with Father. No written order was entered.
A second hearing was held on September 20, 2011. Father offered no testimony at the hearing. At that time, Mother asked the trial court to determine whether or not Father proved the verified motion he filed on November 12, 2010. On September 22, 2011, the trial court entered an order denying Mother’s motion without further comment.[5] This appeal followed.
To prevail on a request for a temporary modification of custody, the moving party must meet the burden of proving that (1) a substantial change in the condition of one or both of the parties has occurred, and (2) the best interests of the child will be promoted by the change. Wilson v. Roseberry, 669 So.2d 1152, 1154 (Fla. 5th DCA 1996) (citing Antonetti v. Amato, 544 So.2d 286, 287 (Fla. 1st DCA 1989)). “The best interests of the child is the primary concern in such matters, and should be dealt with in a deliberate manner with a full hearing and notice to all parties.” Berger v. Berger, 795 So.2d 113, 117 (Fla. 5th DCA 2001). In certain circumstances, an emergency ex parte order temporarily changing custody may be warranted, such as where “a child is threatened with physical harm or is about to be improperly removed from the state.” Fee v. Usler, 761 So.2d 361, 364 (Fla. 5th DCA 2000) (citing Gielchinsky v. Gielchinsky, 662 So.2d 732, 733 (Fla. 4th DCA 1995)). However, before entering an emergency modification order, every reasonable effort should be made to ensure both parties have an opportunity to be heard. Wilson, 669 So.2d at 1154. “If this is not possible ... an opportunity to be heard should be provided as soon thereafter as possible.” Id. Ex parte orders granting temporary custody follow the same procedure as the issuance of a temporary injunction without notice. Fee, 761 So.2d at 364; see also Fla. R. Civ. P. 1.610. And, a party may move to dissolve or modify the temporary *955 injunction at any time. Fla. R. Civ. P. 1.610(d).
Father’s verified petition alleging Mother was a flight risk and had threatened to kill herself and the child, arguably, established an emergency sufficient to support the trial court’s issuance of the initial ex parte order. The issue we must now resolve is whether the trial court erred when it refused to dissolve the ex parte order after the April and September hearings on Mother’s motions. We find that it did. Where a party “challenges the entry of an ex parte order or injunction by a motion to dissolve, at the hearing on the motion the burden is on the party who obtained such a ruling ‘to show that the complaint and supporting affidavits are sufficient to support the injunction.’ ” Dep’t of Children and Families v. D.B.D., 42 So.3d 916, 920-21 (Fla. 4th DCA 2010) (quoting Matin v. Hill, 801 So.2d 1003, 1005 (Fla. 4th DCA 2001)). “[The party] who has obtained ex parte relief based simply on allegations in its complaint cannot shift the burden to the [opposing party] until it has established an evidentiary basis to support such relief.” Matin, 801 So.2d at 1006 (quoting Shea v. Cent. Diagnostic Servs., Inc., 552 So.2d 344, 346 (Fla. 5th DCA 1989)). Here, Father failed to meet his burden when the only evidence he presented was his own testimony and a transcript of the November 5, 2010 hearing where Mother was held in contempt.[6]
Because Father presented insufficient evidence to keep the emergency ex parte order in place at the hearing on Mother’s motion to dissolve, we reverse. However, because the minor child has been living with Father for an extended period of time, the child shall remain with Father until the trial court can conduct a full and proper hearing on the issues of custody and visitation. See Pace, 715 So.2d at 1157 (ordering child to remain with father to minimize disruption to the child despite its decision to reverse the order that changed custody from the mother to the father as a punishment for contempt); Blackwood v. Anderson, 664 So.2d 37, 38 (Fla. 5th DCA 1995) (maintaining custody with appellee until the trial court could conduct a proper full hearing “[b]e-cause the nature of a custody award involves the welfare and protection of children .... ”); see also Berger v. Berger, 813 So.2d 233, 235 (Fla. 5th DCA 2002).
REVERSED and REMANDED WITH DIRECTIONS.
SAWAYA and LAWSON, JJ., concur.

. Mother was held in contempt for refusing to provide the court with her current address, telephone number, employment, and the location of the child’s school. She was remanded to the custody of the Orange County Jail until she purged her sentence by revealing the information. Based on Mother's actions in court, the trial judge also concluded she was a flight risk.

. Although an order releasing Mother from custody was entered by the trial court on November 10, 2010, she was not released until the afternoon of November 12, 2010, at which time the child was returned to her pursuant to the court's November 5, 2010 order.

.Father attached to his motion an affidavit from the uncle indicating that several months prior to the hearing, Mother told him that her life had become difficult and that she wanted to end her life and that of her son. Father also attached a Facebook page indicating Mother was supposed to be working in Atlanta, Georgia the prior week, which contradicted Mother's statement, that she lived and worked in Orlando, Florida.

. The order did not require Mother to obtain a psychological evaluation.

. The September 22, 2011 order also denied Mother’s Sworn Ex Parte Motion to Quash and/or Dismiss Ex Parte Order of 11-5-10 for Outrageous Conduct of Court and Father’s Counsel; for Violation of Mother’s Due Process and Right to Counsel; for Violation of Rule 1.610; and Violation of F.S. 61.13, and Mother's Sworn Ex Parte Motion for Entry of Order for Immediate Return of Minor Child to Mother and for Other Sanctions.

. Contempt orders should not be the basis for a change of custody. Berger, 795 So.2d at 117; Pace v. Solomon, 715 So.2d 1155, 1156 (Fla. 5th DCA 1998) ("A transfer of custody as punishment for one's contempt of court is not an appropriate sanction for the contempt.”).